RAMIREZ et al. v. FLAG OIL CORP. OF DELAWARE et al.

No. 12505.

Court of Civil Appeals of Texas. San Antonio.

March 11, 1953.

Rehearing Denied April 22, 1953.

**132**

Lloyd & Lloyd, Alice, Small, Small & Craig, Austin, David A. Grose and Hector Lopez, Alice, for appellants.

House, Mercer & House, San Antonio, Perkins, Floyd & Davis, Alice, Heath & Vittitoe, Falfurrias, for appellees.

NOWELL, Justice.

This case involves the construction of a mineral deed executed by Severa Vda B. de Mangell (sometimes referred to in the briefs and record as Severa S. de Mangell and Severa Mangell) and husband, P. E. Mangell, dated December 11, 1930. A printed form was used for the conveyance and certain blanks were filled in by handwriting. We set forth here the granting clause and the disputed description. The handwritten parts thereof are indicated by italics:

"Have Granted, Sold, Conveyed and Assigned, and by these presents do grant, sell, convey, assign and deliver unto T. Fred Evins, W. M. Morgan and J. R. Klumpp, as trustees of Texas Osage Co-operative Royalty Pool and unto Flag Oil Company of Texas, a Texas corporation, an undivided *1/2* interest in and to all of the oil, gas, sulphur and all other minerals of whatsoever kind and nature in and under and that may be produced from the herein described lands; hereby granting unto the said trustees of Texas Osage Co-operative Royalty Pool an undivided three-fourths interest in and to the oil, gas, sulphur and all other minerals of *whatsoever kind and nature* hereby conveyed and unto Flag Oil Company of Texas an undivided one-fourth interest thereof; said interest being in and under the following described property lying in *Brooks* County, State of Texas, to-wit:

"*2 Tracts of land containing 315 acres described as follows. First tract containing 217.11 acres was conveyed to grantor by warranty deed signed by Jesus Guzman 10–5–1917 Recorded Vol. 4 pages 552–53 deed Records Brooks County Texas second tract containing 97.89 acres being the same 97.89 acres inherited from her mother Maria Rita Benavides and set aside to grantor by decree of Court May 31–1924–Cause No. 242 Scott et al vs Ramirez et al. all of the above described lands out of the Encantada grant Jose Manuel de Chapa original grantee abst. No. 97.*

it being mutually understood and agreed that this conveyance is to cover all lands now owned by the grantors in the above stipulated surveys, whether herein properly described or not; and

containing 315 acres more or less, together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas, sulphur and all other minerals of whatsoever kind and nature and removing the same therefrom."

This suit originated in a bill of interpleader filed by plaintiff Baldridge & King, Inc. The property described in the bill was as follows:

"All of Share 7, containing 328 acres set aside to Severa S. de Mangell, as Community Administratrix of the Estate of Luis Guzman Benavides, and as next friend of Samuel, Meliton and Alonzo Guzman, her minor children, in a partition of the La Encantada Grant (the east part of said grant is sometimes called the Encino del Poso Grant), J. M. and L. Chapa, Original Grantees, in Cause No. 242, styled J. R. Scott, Jr., et al vs. Celso v. Ramirez, et al, in the District Court of Brooks County, Texas, said Share being contained within the following metes and bounds, to-wit:

"Beginning at the S. W. corner of Share No. 10 for the S. E. corner of this share; Thence N. 5309.4 feet to a point on the S. line of Share No. 12; Thence S. 89 deg. 50' W. 2749 feet to a corner of Share No. 1; Thence S. 1 deg. 35' 5370 feet to a corner of Share No. 1; Thence N. 89 deg. 29' E. 2603 feet to the place of Beginning, more fully described in said judgment of May 31, 1924, in Cause No. 242, above described."

The appellees are the successors in interest of the grantees in the mineral deed of December 11, 1930. They claim an undivided one-half interest in and to the minerals in Share No. 7. The appellants Brijido Ramirez and others are contesting claimants to this interest. Baldridge & King, Inc., and its successor in interest, Chicago Corporation, deposited certain monies into court which resulted from royalties accruing under an oil, gas and mineral lease covering the property. This money, with the exception of a fee allotted to the attorneys for Baldridge & King and Chi-

cago Corporation, was awarded to appellees.

There are three theories of construction suggested by the parties, viz.:

1. The deed operated to convey a full one-half undivided interest in and to the 328 acres of Share No. 7. (This theory was adopted by the court in its reformed judgment, from which this appeal was perfected.)

2. The deed operated to convey an undivided 145.0833 acre interest in the 328 acres contained in said Share No. 7, being the interest owned by the grantor, Severa Mangell at the date of the mineral deed on December 11, 1930. (This theory was adopted by the trial court as the basis for the "first judgment" rendered by it, which was thereafter reformed upon motion of appellees so as to award to them a full ½ undivided interest in Share No. 7.)

3. The deed operated to convey only a half interest in and to an undivided 97.89 acre interest in the 328 acres contained in Share No. 7.

 We are of the opinion that the second theory of construction above set forth is the correct one and that judgment should be rendered accordingly. The description contained in the deed, together with the references therein embodied, constitutes a sufficient basis for identifying a definite interest in land and the instrument is hence operative as a conveyance and the interest conveyed consisted of all the right, title and interest held by Severa Mangell.

It is argued by appellants, with plausibility, that the first tract of the description (containing 217.11 acres) is positively identified by reference to a former deed of conveyance, and this tract, wherever it may be situated, is not shown to be a part of Share No. 7 of the 1924 partition, and that the second tract, with its definite fractional acre description, must be construed as conveying an undivided 97.89 acres interest out of Partition Share No. 7 awarded to Severa Mangell in Cause No. 242. However, the description contains more than a mere reference to 97.89 acres out of said share. The tract is described as having been inherited from Maria Rita Benavides and as having been set aside to Severa Mangell in the 1924

decree. When resort is had to the decree, it appears that no share was awarded exclusively to Severa Mangell, but that Share No. 7 was awarded to her as Community Administratrix of the Estate of Luis Guzman Benavides, and as next friend of Samuel, Meliton and Alonzo Guzman, her minor children. If resort then be had to the proceedings in said Cause No. 242, to determine the interest of Severa Mangell, which was obviously less than the entire share, it is disclosed that while she inherited no land from Maria Rita Benavides (who was her husband's mother) she was, nevertheless, possessed of an undivided 145.0833 acre interest in the share, together with a life estate in additional acres. (The phrase "acre interest" is used upon the assumption that Share No. 7 contains 328 acres. Strictly speaking, the fractional interest of Severa Mangell in the share was 145.0833 over 328.)

In our opinion, resort to the proceedings in Cause No. 242, as well as to the title papers of the lands relating to the share involved, is justified in order to determine the interest Severa Mangell owned in the share at the time of the conveyance, so as to ascertain the property included within the description of the deed. We think the handwritten portion of the description supports this course by its reference to lands "set aside to grantor (Severa Mangell) by decree of Court May 31–1924; Cause No. 242 * * *," as well as by the statement contained in the printed portion of the deed, that "this conveyance is to cover all lands now owned by the grantors in the above stipulated surveys, whether herein properly described or not; * * *." In the deed before us an attempt was made to describe some interest in 328 acres of land in Share No. 7 of a partition of certain lands in the Encantada Grant. It is not contended that some other and different specific tract was included in the description, as was the case in Thomas v. Texas Osage Co-Operative Royalty Pool, Tex.Civ.App., 248 S.W.2d 201.

It appears that Maria Rita Benavides (who was mentioned in the mineral conveyance presently involved) owned 1333⅓ acres of land in the Encantada Grant. She

died intestate, leaving four children who inherited approximately 333⅓ acres each. One of the children, Luis Guzman Benavides, sold his 333⅓ acres, but his brother Simon died and from him he inherited 111.-11 acres. Jesus Guzman Benavides (brother of Luis) executed two conveyances of lands out of the grant, one for 283⅓ acres and one for 49 acres. This reduced his holdings from 444.44 acres (333.33 from his mother and 111.11 from his brother Simon) to 112.11 acres. However, in a decree entered in 1917, the parties thereto partitioned more property among themselves than they owned, with the result that Luis Guzman Benavides was purportedly awarded 427.57 acres, and Jesus Guzman Benavides, 217.11 acres.

By deed dated October 5, 1917 (mentioned in the mineral deed here involved), Jesus Guzman Benavides sought to convey to his brother Luis Guzman Benavides the 217.11 acres which was set aside to him in the 1917 partition. This conveyance was excessive to the extent of 105 acres.

Luis Guzman Benavides died intestate in 1918, leaving his wife, Severa, and three children, Samuel, Meliton and Alonzo. Sometime thereafter Severa married P. E. Mangell. She was a party to Cause No. 242, the 1924 partition wherein Share No. 7 was set aside to her "as Community Administratrix of the Estate of Luis Guzman Benavides, and as next friend of Samuel, Meliton and Alonzo Guzman, her minor children."

The judgment in said Cause No. 242 was rendered in pursuance of an agreement by the interested parties. From her pleading in the case, it appears that Severa Mangell, as surviving wife in community of the estate of Luis Guzman Benavides and as next friend of her minor children, Samuel Guzman, Meliton Guzman and Alonzo Guzman, asserted a claim in and to two separate tracts in the Encantada Grant, viz.: 217.11 acres, described by metes and bounds, which is the same tract as that conveyed to Luis Guzman Benavides by his brother Jesus Guzman Benavides in 1917, and 472.57 acres likewise described by metes and bounds, being the Luis Guzman Benavides tract in the 1917 partition. This 1917 partition decree was referred to in her pleadings as the basis

for the claims asserted, and Severa Mangell also averred that she had title to the premises under the five-year statute of limitations. Article 5509, Vernon's Ann.Tex. Stats.

The agreement for partition duly approved by the attorneys for Severa Mangell provided that:

"Severa G. Mangell as Community Administratrix of the Estate of Luis Guzman Benavides, deceased, for herself and as next friend of her minor children, Samuel Guzman, Meliton Guzman and Alonzo Guzman, shall recover herein on their cross-action only three hundred twenty-eight (328) acres, which shall be in full for the interest represented by them as heirs of Luis Guzman Benavides, as well as for the title by limitation claimed by them in said Grant, and this is to be in lieu of the two tracts containing six hundred eighty-nine and 68⁄100 (698.68) (sic) acres, described in their said cross action."

The final decree sets forth the description of Share No. 7, and awards same to Severa Mangell "as Community Administratrix of the Estate of Luis Guzman Benavides, Deceased, and as next friend of Samuel, Meliton and Alonzo Guzman, her minor children." The decree also provides that "all the right, title and interest in and to the land contained in said Share No. 7, is hereby divested from all other parties plaintiff and defendant to this suit, and is hereby vested in severalty in said Severa S. de Mangell, * * *."

When the decree in Cause No. 242 is considered together with the supporting agreement and pleading, the view is strengthened that it was the intention of Severa Mangell to convey the interest set aside to her "by decree of Court May 31–1924—Cause No. 242 Scott et al vs. Ramirez et al * * * out of the Encantada grant * * * (being) all lands now owned by the grantors (Severa Mangell) in the above stipulated surveys (the Encantada Grant)." She evidently believed that this interest was an undivided one-half interest in 315 acres. However, the actual interest of Severa Mangell in said Share No. 7 did not amount to one-half of the acreage in the share, nor to one-half of 315 acres, for that matter.

The 1924 decree did not purport to partition the lands within Share No. 7 among Severa Mangell and her children. The lands making up the share had three sources of title, namely, 111 acres which had been the separate property of Luis Guzman Benavides (inherited from his brother Simon) which went to his children, subject to Severa Mangell's life estate in one-third thereof, Article 2572, Vernon's Ann.Tex.Stats.; 112 acres, being the actual interest acquired by the purchase from Jesus Guzman Benavides, which was community property and of which one-half belonged to Severa, and 105 acres, acquired by adverse possession, evidently under the deed from Jesus Guzman Benavides. In our opinion this 105 acres was owned one-half by Severa and one-half by her children. The matter will be discussed further in this opinion.

Disregarding the life estate for the moment, it appears that at the time of the partition decree, Severa owned 108.50 acres undivided, and that her children owned the remaining 219.50 acres. In May of 1930, Alonzo Guzman died and from him his mother received one-half of his interest, Article 2570, subd. 2, Vernon's Ann.Tex.Stats., or one-sixth of 219.50 acres, amounting to 36.5833 acres, which added to the 108.50 acres then held by her brought her interest to 145.0833 acres. (We are here again assuming that Share No. 7 contains 328 acres, as called for in the partition decree. We have taken the acre interests mentioned: 111 acres, Luis Guzman Benavides; 112 acres, Jesus Guzman Benavides; and 105 acres, adverse possession, from appellants' brief, as these acreages were apparently the basic figures taken by the trial judge in computing the fractional interests awarded by the first judgment rendered in the case and seem to have been accepted by all parties.)

■■ Under the first judgment rendered below, Flag Oil Corporation of Delaware, R. L. House and Texas Osage Co-operative Royalty Pool, Inc., were awarded the title to 145.0833/328 of all oil, gas or other minerals underlying Share No. 7, as well as an estate for life in the mineral estate to terminate upon the death of Severa Mangell, in

an 18.9167 acre interest, or 18.9167/328 fractional interest. However, upon motion to reform the judgment, the court took the view that the entire 105 acre interest in Share No. 7, the interest acquired by adverse possession, was the property of Severa Mangell and reformed the judgment accordingly. It is urged by appellees that the adverse user was referable to the deed from Jesus Guzman Benavides and the applicable statute was Article 5509, relating to five years limitation; that although the claim of limitation originated while she was married to Luis Guzman Benavides, it was not perfected by the running of the statute until after his death and, consequently, the property became her separate property or the property of the community created by her marriage with P. E. Mangell. It is accordingly asserted that the children of Severa by her marriage with Luis Guzman Benavides' acquired nothing. We believe the case of Hutto v. Cook, 139 Tex. 571, 164 S.W.2d 513, 515, is controlling here. It is recognized, as a general rule, that when "a husband and a wife claim and occupy land with the intention of perfecting title by limitation, and one of the spouses dies before limitation is complete, such land becomes the property of the survivor who matures the period of limitation." However, this rule does not apply where the original entry is made under an equitable right, that is, by one who is not a naked trespasser. Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471, or when after the death of the spouse, the survivor continues the claim in open recognition of the rights of the heirs of the deceased community partner. The adverse possession claim may be perfected for the benefit of the heirs of a decedent. This is the clear holding of Hutto v. Cook, supra. In the instant case, original entry was made under a deed from Jesus Guzman Benavides, which was at least effective to convey an undivided fee interest. When the adverse claim to the balance of the acreage called for by the deed was eventually perfected, Severa Mangell requested that it be set aside to her *and to her children* in the partition proceedings. This was accordingly done by agreement with other owners of the lands partitioned in Cause No. 242. It is

conclusively shown that at the time the claim was perfected it was a claim on behalf of Severa Mangell *and the children* of her deceased husband. She thereupon acquired one-half of the 105 acres involved, while her children acquired the remaining one-half. Whether her one-half be considered her separate property or a part of the community estate of her second husband, P. E. Mangell, and herself, is a matter which is not material upon the present inquiry. The court below erred in granting appellees' motion to reform the judgment.

What has been said disposes of most of the contentions raised by the briefs. There was no error in the award of fees for the attorneys of the original plaintiff and the intervener (Baldridge & King, Inc. and Chicago Corporation). Appellants' third point is multifarious in form and also deemed without merit.

For the error pointed out, the judgment appealed from will be reversed and judgment rendered by this Court in accordance with the first judgment entered by the court below.

Reversed and rendered.